Filed 9/27/21

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F079108 |
| Plaintiff and Respondent, | (Super. Ct. No. SC073336A) |
| v. | |
| DAVID LEE HARRING, JR., | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Michael G. Bush, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Cavan M. Cox II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

**INTRODUCTION**

Appellant David Lee Harring, Jr. is serving life without the possibility of parole (LWOP) for a murder he committed in 1997, before he turned 18 years old. Harring appeals from the superior court's order denying his petition to recall his sentence under Penal Code section 1170, subdivision (d)(2) (section 1170(d)(2) or § 1170(d)(2)).[1]

Among other threshold eligibility requirements, under section 1170(d)(2) petitioners must prove by a preponderance of the evidence that at least one of four mitigating circumstances under section 1170, subdivision (d)(2)(B)(i) through (iv) is true. Pursuant to section 1170, subdivision (d)(2)(B)(ii) (section 1170(d)(2)(B)(ii) or subparagraph (ii)), Harring attests he does "not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims ...." (§ 1170(d)(2)(B)(ii).) Harring had a prior juvenile felony adjudication for second degree burglary, which he argues does not come within the category of crimes excluded under subparagraph (ii).

For the reasons discussed below, we conclude that subparagraph (ii) requires a court to consider the felony crime subject to juvenile adjudication and its elements to determine whether it is a crime with "significant potential for personal harm to victims."[2] Subparagraph (ii) enumerates assault as a crime with significant potential for personal harm to the victim. The degree of risk and type of harm another felony crime presents must be evaluated in light of the requisite physical conduct that creates the degree and type of harm in an assault crime. The conduct comprising the crime of second degree commercial burglary is unlike assault in that it does not involve an act that by its nature creates a risk of physical harm to another. As such, Harring's prior juvenile adjudication

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    This appeal does not present the issue of whether a crime's attendant enhancement allegations that are proven or admitted should be considered as part of the crime adjudicated. We express no opinion on how such proven or admitted conduct should be considered.

for second degree burglary is not one with a significant potential for personal harm to victims, and a contrary conclusion is unsupported. Due to the language of subparagraph (ii), we reverse the trial court's determination that Harring has not proven true his attestation under subparagraph (ii).

Harring additionally argues that if resentencing is deemed to have occurred under section 1170(d)(2), it was constitutionally insufficient. The trial court expressly declined to resentence Harring because he did not meet the threshold eligibility requirements under section 1170(d)(2)(B) and denied the petition on that ground. There is no basis to conclude the trial court conducted a resentencing hearing, and thus no sentencing error could have occurred.

Finally, Harring contends he is entitled to a proceeding under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to make a record of youth-related factors relevant to an eventual parole hearing. We decline to consider whether a *Franklin* hearing is warranted. Nothing in this record indicates Harring is precluded from requesting a hearing pursuant to *In re Cook* (2019) 7 Cal.5th 439 (*Cook*). If Harring wishes to request a *Franklin* hearing, he may do so with the trial court in the first instance.

The matter is remanded to the trial court to conduct a resentencing hearing in accordance with the relevant portions of section 1170(d)(2). We express no opinion on how the court should exercise its sentencing discretion under section 1170(d)(2).

## BACKGROUND

I. **Section 1170(d)(2) Recall and Resentencing Petition Process**

Enacted in 2012, section 1170(d)(2) allows an inmate subject to LWOP to petition for recall and resentencing if the inmate was under 18 years of age when the crime was committed, and the inmate has served at least 15 years of the sentence. (§ 1170(d)(2)(A)(i).)

The petition must describe the inmate's remorse for the crime and the inmate's work toward rehabilitation, and must include a statement or showing of *any one of the*

3.

*following four* possible mitigating circumstances: (1) conviction under the felony-murder rule or as an aider and abettor; (2) no juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which sentence is being considered for recall; (3) committing the crime with at least one adult confederate; or (4) performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, taking rehabilitative, educational or vocational programs in prison if available, using self-study for self-improvement, or showing evidence of remorse. (§ 1170(d)(2)(B)(i)–(iv).)

Upon reviewing the petition and any opposition thereto, if the court "finds by a preponderance of the evidence that one or more of the statements specified in clauses (i) to (iv), inclusive, of subparagraph (B) is true, the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.…" (§ 1170(d)(2)(E).)

## II.   Harring Sentenced to LWOP for Murder in 1998

In November 1997, when Harring was 17 years old, he and three others approached brothers Arnulfo and Arturo Sorio, who were walking home from an English language class they had just completed. During an altercation with the brothers, Harring shot them both. Arnulfo was shot in the neck and the head, the second of which was fatal. Arturo was hit by a bullet in his arm, which passed into his chest, but he survived.

The People charged Harring with (1) first degree premeditated murder (§ 187, subd. (a)) of Arnulfo Soria committed during the commission of a robbery (§ 190.2, subd. (a)(17)); (2) attempted first degree premediated murder (§§ 664/187, subd. (a)) of Arturo Soria with enhancement allegations for the personal use of a firearm under section 12022.5, subdivision (a), and inflicting great bodily injury (GBI) under section 12022.7; (3) attempted robbery (§§ 212.5, subd. (c)) of Arnulfo Soria with an enhancement allegation for personal use of a firearm under section 12022.5; and

4.

(4) attempted robbery (§§ 664/212.5, subd. (c)) of Arturo Soria with enhancement allegations for the personal use of a firearm under section 12022.5, subdivision (a), and for inflicting GBI under section 12022.7.

On June 9, 1998, a jury convicted Harring of each offense and found true all enhancement allegations. The court sentenced Harring on July 30, 1998, to LWOP on count 1, plus an additional 10-year determinate term for the section 12022.5, subdivision (a), enhancement. A term of life with the possibility of parole was imposed for the count 2 offense, with an additional 10-year determinate term for the section 12022.5, subdivision (a), enhancement and a three-year additional term for the section 12022.7 enhancement on this count. Defendant was also sentenced to a term of three years on each counts 3 and 4, which were stayed pursuant to section 654, as were the terms imposed for the enhancements found true as to counts 3 and 4.

### III. Harring's Petition for Recall and Resentencing Under Section 1170(d)(2)

On December 19, 2018, approximately 20 years after beginning to serve his sentence, Harring filed a petition with Kern Superior Court for recall and resentencing pursuant to section 1170(d)(2). The petition stated-that Harring was 17 years old at the time of the offense, he was sentenced to LWOP in July 1998, and he has served more than 15 years of the sentence. Harring submitted a statement of remorse and rehabilitation, and he asserted that he met two of the four criteria under section 1170(d)(2)(B)(i)–(iv): (1) he does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall (§ 1170(d)(2)(B)(ii)); and (2) he has performed acts that tend to indicate rehabilitation or the potential for rehabilitation (§ 1170(d)(2)(B)(iv)).

The People opposed the petition in February 2019. Although acknowledging Harring was eligible to petition for recall, the People argued neither of the two statements asserted under section 1170(d)(2)(B)(i)–(iv) could be found true. The People argued

Harring had a prior juvenile adjudication for attempting to steal a PlayStation from a Montgomery Ward store for which charges of robbery and commercial burglary were pressed. The People argued that, based on a police report, Harring had an altercation with a security guard while trying to steal the item. This altercation involved a significant potential for harm to the victim. Thus, even though Harring only pleaded guilty to commercial burglary and the robbery charge was ultimately dropped, it does not meet the requirement of section 1170(d)(2)(B)(ii). The People also disputed Harring's statement under section 1170(d)(2)(B)(iv), arguing that Harring's extensive prison disciplinary records do not indicate rehabilitation or the potential for rehabilitation.

A hearing was held on March 13, 2019, where Harring's mother and Harring testified. Harring was asked about the juvenile adjudication from March 1997. He explained he was arrested for trying to steal a PlayStation. A security guard grabbed his jacket and would not let go. In reaction, Harring hit the security guard. To his knowledge, the security guard had not sustained any physical injuries as a result of the altercation. He had admitted the allegation of second degree burglary and was ordered to perform community service, which he did not complete.

Harring also testified about his rehabilitation efforts in taking classes and participating in programs in prison, and he was questioned about his Department of Corrections and Rehabilitation (CDC) 115 violations.[3] Since 2010, he has been cited for 13 CDC 115 violations, some of which involve assaultive conduct and drug possession. His latest CDC 115 violation was in July 2015 for possession of heroin.

On March 27, 2019, the court denied the petition, concluding that neither of the two circumstances asserted under section 1170(d)(2)(B)(ii) and (iv) were true by a preponderance of evidence. The court indicated the hearing should not have been held

---

[3]    A CDC 115 refers to a CDC rules violation report, which documents misconduct that is believed to be a violation of law or is not minor in nature. (*In re Roderick* (2007) 154 Cal.App.4th 242, 249, fn. 3; Cal. Code Regs., tit. 15, § 3312, subd. (a)(3).)

because the petition should have been denied on the papers alone. But, even after considering the hearing testimony, the court observed neither of the asserted bases for recall of the sentence was true by a preponderance of evidence. The petition was denied, and this appeal followed.

## DISCUSSION

### I.      Section 1170(d)(2)(B)

Harring argues the trial court erred in concluding neither of his statements under section 1170(b)(2)(B)(ii) and (iv) was true by a preponderance of evidence. Under an appropriate interpretation of the statute, Harring maintains, the evidence was insufficient to support the trial court's determination in either regard. We begin with section 1170(d)(2)(B)(ii) and Harring's prior juvenile adjudication for burglary.

#### A.      Background

To support his assertion under section 1170(d)(2)(B)(ii), Harring attached a March 1997 juvenile wardship petition under Welfare and Institutions Code section 602, asserting that Harring came within the jurisdiction of the juvenile court for violating section 212.5 (robbery) and section 460, subdivision (b) (second degree burglary) by attempting to take merchandise from a Montgomery Ward store in Bakersfield by force or fear.

Harring attached the subsequent March 12, 1997, order of the juvenile court for Kern Superior Court, which adjudged Harring to be a ward of the court; Harring admitted to violating section 460, subdivision (b), and the robbery charge was dismissed upon the district attorney's motion. Harring was granted probation to a date not to exceed his 21st birthday, and he was ordered to complete 120 hours in the juvenile court work program. Also attached was a second juvenile petition filed against Harring in June 1997 alleging a violation of Welfare and Institutions Code section 777, subdivision (a)(2), for failing to report to the juvenile court work program as ordered. Harring admitted the violation and was ordered to spend 15 days in juvenile hall.

7.

In opposing Harring's section 1170(d)(2) petition, the People argued a police report indicated Harring had shoved and repeatedly punched and hit a security guard while committing the juvenile burglary offense. The People also noted robbery was one of the charged offenses in that juvenile adjudication, even though it was ultimately dismissed. This police report was not attached as an exhibit to the opposition. The People did attach a copy of a probation report filed on July 22, 1998, in relation to Harring's offenses for which he is serving the current LWOP sentence. In the criminal history section, the probation report notes Harring's March 1997 juvenile adjudication and that he stole merchandise from a Montgomery Ward store valued at $650 and "shoved clerk & fled."

The trial court set a hearing on the petition. Harring's counsel elicited testimony from Harring about his altercation with the security guard during the commission of the March 1997 burglary. Harring testified he hit the security guard when the guard tried to grab his jacket as Harring was walking to the door. The trial court ultimately concluded that whether evaluating only the petition and opposition papers or also considering the hearing testimony, the section 1170(d)(2)(B)(ii) statement was not true—the court denied the request to recall Harring's sentence.

The parties' central dispute is how the trial court should have evaluated the truth of Harring's assertion under section 1170(d)(2)(B)(ii)—i.e., that he has no prior juvenile adjudications for assault *or other felony crimes with a significant potential for personal harm to the victims*. As noted, Harring does not have a juvenile adjudication for assault, but he does have one for second degree commercial burglary.[4] Harring argues the plain

---

[4] Harring was adjudged a ward of the court within the meaning of Welfare and Institutions Code section 602, subdivision (a). That statute states, "[e]xcept as provided in [Welfare and Institutions Code] Section 707, any minor who is between 12 years of age and 17 years of age, inclusive, when he or she violates any law of this state … defining crime …, is within the jurisdiction of the juvenile court, which may adjudge the minor to be a ward of the court." Juvenile adjudication here refers to adjudging Harring a ward of the court for violation of the law

8.

meaning of subdivision (d)(2)(B)(ii) limits the trial court to examining only the statutory elements of whatever felony crime was at issue in the prior juvenile adjudication—the statute does not authorize consideration of unproven factual circumstances related to the offense which was subject to juvenile adjudication. According to Harring, second degree commercial burglary is not an offense with a significant potential for personal harm to any victim—none of the elements of the offense have anything to do with personal injury, assault or battery. Thus, the trial court's ruling his juvenile adjudication for burglary involved a significant potential for harm to the victim was erroneous and unsupported.

Alternatively, even if the entire record of conviction may be examined to assess the truth of a statement under section 1170, subdivision (d)(2)(B)(ii), Harring argues none of the evidence regarding his prior juvenile burglary adjudication—his petition hearing testimony, the prosecutor's reference to a police report relating to the juvenile offense, which was not supplied to the trial court, or a 1998 probation report from the offense for which he is currently incarcerated—is part of the record of that 1997 juvenile adjudication. Harring maintains that no evidence the trial court was entitled to consider supported the court's ruling.

The People maintain Harring offered hearing testimony about facts related to his prior juvenile adjudication, so he forfeited any claim the trial court could not consider those facts. Beyond that, the People dispute that section 1170(d)(2) limits the trial court from considering unadjudicated factual circumstances surrounding the prior juvenile adjudication. Since there was evidence Harring's prior juvenile adjudication for burglary involved him pushing a security guard, the trial court's conclusion the prior adjudication

---

defining the crime of burglary. The record of Harring's juvenile adjudication does not establish other conduct, outside that comprising the crime of burglary, was admitted or proven true.

9.

involved significant potential for personal harm to victims was supported by substantial evidence.

### B. Analysis

#### 1. No Forfeiture

Harring's claim is not forfeited.  It was the People who first introduced unproven facts about Harring's prior burglary adjudication through reference to a police report and a 1998 probation report following Harring's murder conviction, which included statements about the 1997 juvenile offense.  Harring did not object to the police report reference in the opposition brief or the probation report exhibit, and he testified about the circumstances of the 1997 juvenile offense at the evidentiary hearing regarding the petition.  Harring is not disputing the circumstances of that offense.  Harring's claim is squarely a legal one—whether those facts may be considered by the trial court in reaching its determination about the truth of Harring's section 1170(d)(2)(B)(ii) statement.  (*People v. Yeoman* (2003) 31 Cal.4th 93, 118 [claim based on pure question of law on undisputed facts cognizable on appeal].)  Harring's claim has not been forfeited for purposes of appeal.

#### 2. Standard of Review

The proper interpretation of a statute is a question of law subject to de novo review.  (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)  When the trial court applies its factual findings under a statute, we review the factual findings for substantial evidence; but the interpretation and application of the statute to those factual findings is a question of law subject to de novo review.  (*People v. Johnson* (2016) 1 Cal.App.5th 953, 960; see *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1086–1087 [trial court's factual finding that petitioner was ineligible for § 1170.95 relief because he was a major participation who acted with reckless indifference to human life reviewed for substantial evidence].)

"'"[A]n order is presumed correct; all intendments are indulged in to support it on matters as to which the record is silent, and error must be affirmatively shown."'"

10.

[Citation.] In addition, we must "'view the record in the light most favorable to the trial court's ruling.""" (*People v. Johnson*, *supra,* 1 Cal.App.5th at p. 960.)

### 3. Subdivision (d)(2)(B)(ii) Requires Examining Only the Crime Subject to Juvenile Adjudication and Its Elements

The fundamental task of statutory interpretation is to determine the Legislature's intent so as to effectuate the law's purpose. (*People v. Lewis*, *supra,* 11 Cal.5th at p. 961.) Examining a statute's words is the starting place, affording those words a plain and commonsense meaning. (*People v. Gonzales* (2018) 6 Cal.5th 44, 49.) "The words of a statute must be construed in context, keeping in mind the statutory purpose." (*Id*. at p. 50.) "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616 (*City of San Jose*).) ""If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.""" (*Id*. at pp. 616–617.) """"We must … give [an ambiguous provision] a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, … which upon application will result in wise policy rather than mischief or absurdity.""""" (*People v. Morrison* (2019) 34 Cal.App.5th 980, 989, quoting *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567.)

The relevant language of section 1170(d)(2)(B), which was also in effect at the time the recall and resentencing petition was decided, is as follows:

> "(B)   The defendant shall file the original petition with the sentencing court. A copy of the petition shall be served on the agency that prosecuted the case. The petition shall include … the defendant's statement that one of the following is true:

> "(i)   The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law.

"(ii)    The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall.

"(iii)    The defendant committed the offense with at least one adult codefendant.

"(iv)    The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation .…"  (§ 1170(d)(2)(B)(i)–(iv).)

Section 1170(d)(2)(E) provides that, "If the court finds by a preponderance of the evidence that one or more of the statements specified in clauses (i) to (iv), inclusive, of subparagraph (B) is true, the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced .…"

To determine the truth of a statement made under subparagraph (ii), the language directs the trial court to determine whether there are any "juvenile felony adjudications" for particular crimes:  "assault" or "other felony crimes with a significant potential for personal harm to victims .…"  The subparagraph does *not* refer to the juvenile's conduct during the commission of these offenses.  When the Legislature wishes trial courts to make broader determinations about conduct related to an offense, it knows how to do so. (See § 667, subd. (e)(2)(C)(iii) [those with two or more prior strikes and a current nonviolent, nonserious felony are ineligible for second-strike sentencing if "[*d*]*uring the commission of the current offense*, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause [GBI] to another person[]" (italics added)]; see also *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1332 [express statutory language of § 667, subd. (e)(2)(C)(iii), requires trial court to make factual determination that is not limited by review of statutory offenses and enhancements of which the petitioner was convicted].)

*In re Jensen* (2001) 92 Cal.App.4th 262 (*Jensen*) is instructive. There, the court interpreted language under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), which provides that a prior juvenile adjudication may be considered a prior felony conviction for purposes of sentence enhancement under that law if the prior juvenile adjudication meets four different requirements under section 667, subdivision (d)(3) (section 667(d)(3)). (*Jensen, supra,* at pp. 264–267.) One of those requirements is that the "juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." (§ 667(d)(3)(D).) In *Jensen*, the offense the defendant had been adjudged a ward of the juvenile court was one not then listed under Welfare and Institutions Code section 707, subdivision (b), thus the prior adjudication could not qualify as a strike. (*Jensen, supra,* at p. 266.) The court rejected the People's argument to go behind the bare adjudication to determine from the entire record whether the adjudication involved conduct amounting to a Welfare and Institution Code section 707, subdivision (b), offense. (*Jensen, supra,* at p. 266.) The court adhered to the statute's plain language and reasoned that even if there were facts that could constitute such an offense, there was no juvenile adjudication because of such an offense. (*Ibid.*)

Here, subparagraph (ii) does not hinge on whether the prior juvenile felony adjudication involved *other conduct* with a substantial potential for personal harm to victims. The language of subparagraph (ii) expressly refers to a felony *crime* with the significant potential for personal harm to victims. The conduct that comprises a crime is articulated by the elements of the offense. If the Legislature had meant courts to engage in a factfinding process regarding any other kind of conduct than that comprising the crime, it would have indicated so. Like *Jensen*, a broader inquiry into underlying conduct related to the commission of an offense cannot be read into the plain language of subparagraph (ii).

13.

The People argue that limiting consideration under subparagraph (ii) to the elements of the crime for which there was a juvenile felony adjudication is out of step with section 1170(d)(2) as a whole and is unworkable in practical application. The People point out section 1170(d)(2) contemplates that the decision to recall will be based solely on written papers without a hearing. Thus, the People contend, to expect a petitioner to identify the specific code section of the felony crime and attest that its elements do not involve significant potential for personal harm to victims in the abstract is unduly complicated. The People also maintain it will defeat the purpose of the statute by punishing deserving petitioners and creating a "windfall" to petitioners who engage in violent behavior but whose crimes in the abstract are deemed not to pose a significant potential for personal harm to victims. Moreover, the People maintain, evaluating a crime in the abstract, rather than the real-world conduct of the petitioner during the crime, sets up an analytical framework based on speculative guesswork.

Even assuming the language of subparagraph (ii) is ambiguous regarding what conduct may be considered to determine the degree of risk and type of harm a crime poses, we are not persuaded by these contentions. (*City of San Jose*, *supra,* 2 Cal.5th at pp. 616–617 [if statutory language is ambiguous, courts may consider other aids such as the statute's purpose, legislative history, and public policy].) Contrary to the People's arguments, examining the felony and its elements for which there is a juvenile adjudication neither undercuts the purpose of the statute nor places an unduly difficult burden on petitioners. The parties both note that the statute's petition process contemplates the threshold eligibility determination will be based solely on the parties' briefs and supporting documentation without a hearing.[5] In our view, examining the

_____

[5]     As enacted in 2012, section 1170(d)(2)(E) provided that "If the court finds by a preponderance of the evidence that the statements in the petition are true, the court shall hold a hearing to consider whether to recall the sentence and commitment previously ordered and to resentence the defendant in the same manner as if the defendant had not previously been sentenced .…" (Stats. 2012, ch. 828, § 1.)

14.

felony crime and its elements for which there was a juvenile adjudication is more amenable to the statute's petition process than evaluating, without an evidentiary hearing, the truth of underlying conduct that was not adjudicated or admitted as part of the juvenile adjudication at issue. Assessing other unproven conduct calls for factual findings about circumstances occurring more than 15 years before.[6] Relevant evidence will be stale, if not inaccessible or destroyed, and likely comprised of multiple layers of hearsay. The language of subparagraph (ii) does not encompass such an inquiry, and the petition process under section 1170(d)(2) is ill-suited to resolve decades-old factual issues on the papers alone. Moreover, it is significant when the prosecuting official in the juvenile adjudication declines to pursue punishment for related conduct that is not a necessary element of the proven or admitted offense—here, for example, the robbery charge was dismissed.[7]

Further, adherence to the plain language of the statute does not require a petitioner to do any more or less than is already required. Petitioners who seek to establish the mitigating circumstance under subparagraph (ii) must still attest they have no juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims. Lay petitioners are in no better or worse position to make this

---

In 2016, the Legislature amended section 1170(d)(2)(E) to make nonsubstantive clarifications. (Stats. 2016, ch. 696, § 1.1.) The amended subdivision now provides that, "If the court finds by a preponderance of the evidence that one or more of the statements specified in clauses (i) to (iv), inclusive, of subparagraph (B) is true, the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced …." (§ 1170(d)(2)(E).) The amended subdivision makes clear a hearing will be held for resentencing once a decision to recall has been made.

[6] A petition for recall and resentencing under section 1170(d)(2) may not be filed until the petitioner has served at least 15 years of the LWOP sentence. (§ 1170(d)(2)(A)(i).)

[7] Robbery, unlike burglary, requires proof the defendant used force or fear to take property or prevent the person from resisting. (§ 211; see CALCRIM No. 1600 (Robbery).)

15.

attestation just because the trial court will evaluate the crime that was the subject of the felony juvenile adjudication rather than unproven conduct related to the adjudication.

Nor does this create a "windfall" to petitioners who engaged in violent behavior as juveniles or a detriment to otherwise "deserving" petitioners as the People assert. Evaluating the felony and its elements ensures that only conduct necessarily proven or admitted during the juvenile adjudication is assessed—that does not undercut deserving petitioners. If violent behavior is proven or admitted during the juvenile felony adjudication, the crime to which it relates will almost certainly be one with a significant potential for personal harm to victims.

This brings us to the People's apprehension that evaluating only the felony and its elements in the abstract, without considering other conduct, presents an amorphous and unworkable inquiry. The People maintain such an inquiry would require a statistical analysis of all crimes committed in the class at issue to determine how often they result in significant potential for personal harm to victims. This would also involve defining the terms "significant potential" and "personal harm," which the record provides no help in answering. Harring responds that courts make this type of assessment frequently and points to court determinations about whether an underlying felony is inherently dangerous for purposes of second degree felony murder.

The People's concerns echo many of the same analytical difficulties the United States Supreme Court confronted in *Johnson v United States* (2015) 576 U.S. 591 (*Johnson*) with respect to the definition of a violent crime contained in the federal Armed Career Criminal Act of 1984 (18 U.S.C. § 924) (ACCA), which Harring also cites. Yet, we do not find the language of subparagraph (ii) points to the uncertain inquiry *Johnson* concluded the ACCA's residual clause posed and ultimately struck down as unconstitutionally vague. Nor does it create the need for the abstract hypothesizing the

16.

People articulate.[8]  The contrasts between the residual clause and subparagraph (ii) are helpful to illustrate how this is so.

The ACCA imposes an enhancement for certain offenders with three or more earlier convictions for a "serious drug offense" or a "violent felony."  (18 U.S.C. § 924(e)(1).)  The ACCA defines "'violent felony'" to include any crime punishable by imprisonment for a term exceeding one year that—"(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives*, or otherwise involves conduct that presents a serious potential risk of physical injury to another* .…"  (18 U.S.C. § 924(e)(2)(B)(i)–(ii), italics added.)  The closing portion of the definition, in italics above, became known as the ACCA's residual clause.  (*Johnson*, *supra,* 576 U.S. at p. 594.)  The residual clause was deemed to require courts to use a categorical approach—i.e., a court assessed whether a crime qualified as a violent felony "'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'"  (*Id.* at p. 596.)

Similarly, subparagraph (ii) enumerates a crime and ties it to a description of other offenses coming within the category:  subparagraph (ii) identifies and disqualifies as a mitigating circumstance prior juvenile felony adjudications for "assault or other felony crimes with a significant potential for personal harm to victims .…"  (§ 1170(d)(2)(B)(ii).)  The residual clause, though, comes with a two-fold difference that created an inquiry *Johnson* held too vague to be constitutionally tenable.

First, the residual clause broadly includes any crime that "otherwise *involves conduct* that presents a serious potential risk of physical injury to another .…"  (18 U.S.C. § 924(e)(2)(B)(ii), italics added.)  That signals a broader inquiry than the

---

[8]     The petition process under section 1170(d)(2) is not a sentence enhancement like the ACCA, and it does not pose the same due process issue that concerned the high court in *Johnson*.

17.

preceding subparagraph, which included those crimes who had "'*as an element*'" the use (or attempted or threatened use) of physical force.  (*Johnson*, *supra*, 576 U.S. at p. 596 ["The court's task goes beyond deciding whether creation of risk is an element of the crime. That is so because, unlike the part of the definition of a violent felony that asks whether the crime 'has *as an element* the use … of physical force,' the residual clause asks whether the crime '*involves conduct*' that presents too much risk of physical injury."].)  Moreover, the enumerated crimes preceding the residual clause included extortion and burglary.  *Johnson* explained that unlike the other enumerated crimes of arson and those involving the use of explosives, the conduct comprising burglary and extortion (the elements of the offenses) does not normally involve physical conduct that will injure someone.  (*Ibid.*)  "[T]he inclusion of burglary and extortion among the enumerated offenses preceding the residual clause confirms that the court's task also goes beyond evaluating the chances that the physical acts that make up the crime will injure someone."  (*Ibid.*)  This left courts with "grave uncertainty" about how to estimate the risk posed by a crime because it tied the assessment to the imagined ordinary case, not to real-world facts or statutory elements.  (*Id.* at p. 597.)

Distinctly, subparagraph (ii) does not signal an inquiry beyond the elements of the felony committed to determine whether it has a "significant potential for personal harm to victims .…"  (§ 1170(d)(2)(B)(ii).)  Subparagraph (ii) does not contain the ACCA's shift in language from considering elements of a crime to evaluating broadly under the residual clause whether a crime *otherwise* involves conduct of a particular type. Moreover, subparagraph (ii)'s only enumerated crime is assault—a crime whose necessary elements include physical conduct that creates the risk of harm.  (*People v. Williams* (2001) 26 Cal.4th 779, 790 [assault requires an act that by its nature would directly and probably result in the application of physical force to a person]; see CALCRIM No. 915 (Simple Assault).)  Courts do not have to imagine what type of other conduct would be involved in a typical case that would create the risk of harm.

Second, the residual clause also left uncertainty about how *much* risk a crime must pose to qualify as a violent felony. (*Johnson*, *supra,* 576 U.S. at p. 598.) By asking whether the crime "'*otherwise* involves conduct that presents a serious potential risk,'" the clause "force[d] courts to interpret 'serious potential risk' in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives. These offenses are 'far from clear in respect to the degree of risk each poses.'" (*Ibid.*) Similarly, subparagraph (ii)'s use of the adjective "other" signals additional crimes of the sole type already mentioned—i.e., assault, and thereby denotes assault as a "crime[] with a significant potential for personal harm to victims .…"[9] If the Legislature had not considered assault as a crime with significant potential for personal harm to victims, the subparagraph's use of the word "other" is mere surplusage. (See *City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 54 ["In construing the words of a statute … every word should be given some significance, leaving no part useless or devoid of meaning."].) In other words, like the residual clause, "significant potential for personal harm" is to be evaluated in light of the preceding enumerated crime of assault. Nevertheless, subparagraph (ii) is markedly distinct because, again, assault is the only crime enumerated. Missing is the discrepancy of the degree of risk among the enumerated crimes preceding the residual clause.

Subparagraph (ii) does not require a court to assess an imagined typical case of the crime at issue and evaluate whether it involves conduct that creates and poses the requisite risk of harm to victims. The risk of speculation and guesswork about which the People are concerned is absent here. Determining what "other felony crimes" are covered by subparagraph (ii) is based on consideration of the physical conduct necessary

---

[9]    The phrase in subparagraph (ii) "assault or other felony crimes with a significant potential for personal harm to victims" is functionally equivalent to a phrase such as "I will need a microwave or other household appliance that can heat food."

to constitute the crime and assessed in relation to assault, the single enumerated crime within the category.  (§ 1170(d)(2)(B)(ii).)

### 4. Application of Subparagraph (ii)

We turn now to assess whether Harring's juvenile felony adjudication for second degree burglary is among the crimes disqualifying a petitioner from the mitigating circumstance of subparagraph (ii).  Again, petitioners must prove true by a preponderance of evidence that they do not have "felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall."  (§ 1170(d)(2)(B)(ii).)  As discussed above, the language of subparagraph (ii) enumerates assault as a crime with significant potential for personal harm to victims.  Assault is thus the starting place to determine whether the type and risk of harm a crime involves, based solely on the elements of the offense, makes it one with the requisite potential for harm under subparagraph (ii).

Simple assault is statutorily defined as an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another.  (§ 240.)  It requires an act that by its nature would directly and probably result in the application of physical force to a person.  (*People v. Williams*, *supra,* 26 Cal.4th at p. 790 [articulating elements of assault]; see CALCRIM No. 915 (Simple Assault).)  This is the physical act of assault that creates a potential for harm to a victim.  The crime is complete even if the act does not actually result in a physical injury to the victim.  (*People v. Chance* (2008) 44 Cal.4th 1164, 1168, fn. 2 [injury element of assault is satisfied by any attempt to apply physical force to the victim].)

Viewed in light of assault, a crime risking harm to victims within the meaning of subparagraph (ii) necessarily involves an act that by its nature creates the risk of physical harm to another, even if no physical injury actually occurs.  The required elements of second degree burglary include (1) entry into an uninhabited structure as defined in sections 459 and 460, subdivisions (a) and (b), (2) with the intent to commit grand or

20.

petit larceny. (§§ 459, 460, subds. (a) & (b); see CALCRIM No. 1700 (Burglary).) These necessary elements involve no physical act that by its nature creates a potential for physical harm to a victim. As a result, we do not even reach whether the potential for harm is "significant" or the harm is "personal" to the victim. (§ 1170(d)(2)(B)(ii).) As the inquiry under subparagraph (ii) involves consideration of only the physical conduct that comprises burglary itself, we do not examine other unproven conduct related to the commission of the crime—even conduct Harring now admits.

As Harring's prior juvenile felony adjudication for burglary does not come within the category of crimes excluded under subparagraph (ii), his attestation under subparagraph (ii) was proven true by a preponderance of the evidence. No contrary conclusion is supported. Harring met each of the threshold eligibility requirements under section 1170(d)(2)(B) for a resentencing hearing, including proving true his attestation under subparagraph (ii). His sentence, therefore, should have been recalled and a resentencing hearing should have been held. (§ 1170(d)(2)(E) ["If the court finds by a preponderance of the evidence that one or more of the statements specified in [section 1170(d)(2)(B)(i) through (iv)] is true, the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant .…"].)

Whether Harring proved true by a preponderance of evidence his statement under section 1170(d)(2)(B)(iv) is moot and we do not reach that issue.

II.     **Remaining Issues**[*]

A.     **There Was No Resentencing Hearing**

Harring argues alternatively that to the extent the trial court's ruling can be interpreted as recalling his sentence and reimposing LWOP, that sentence violates his

---

[*]     See footnote, *ante*, page 1.

Eighth Amendment rights under the federal Constitution because it does not comply with *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*).[10]

The People maintain the court did not recall Harring's sentence and expressly indicated no resentencing would take place. According to the People, there is no basis for a challenge to his sentence under *Miller*.

The People are correct. The trial court did not resentence Harring to LWOP. The court indicated the petition to recall was denied, and should have been denied on the papers alone, because neither of the two attestations under section 1170(d)(2)(B) were proven true by a preponderance of the evidence. As the court concluded the threshold eligibility criteria had not been met, the statute did not permit a resentencing hearing and none was held. (§ 1170(d)(2)(E).) Harring's constitutional argument under *Miller* is without merit.

### B. Harring May Request a *Franklin* Hearing

Harring contends that regardless of the court's determination on his petition for recall and resentencing, he is entitled to a hearing under *Franklin*, *supra,* 63 Cal.4th 261 to make an adequate record of youth-related factors relevant to a future parole hearing.

The People assert Harring already had the opportunity to make such a record through the evidentiary hearing on his recall and resentencing petition. According to the People, remand for this purpose is not warranted.

---

[10] In *Miller*, the United States Supreme Court ruled that under the Eighth Amendment to the United States Constitution a state may authorize its courts to impose a life sentence without parole on a juvenile homicide offender only when the penalty is discretionary and the sentencing court's discretion is properly exercised. (*Miller*, *supra,* 567 U.S. at pp. 479–480; see *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1379.) In this context, the proper exercise of discretion requires the court "to consider relevant evidence as may exist concerning factors that *Miller* identified as bearing on the 'distinctive attributes of youth' and how these attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders.'" (*In re Kirchner* (2017) 2 Cal.5th 1040, 1042, quoting *Miller*, *supra,* at p. 472.)

In *Franklin*, the defendant had committed a murder at age 16, was tried as an adult, and given a sentence of 50 years to life. (*Franklin*, *supra,* 63 Cal.4th at pp. 268, 272.) He challenged his sentence on direct appeal as a violation of the Eighth Amendment ban on cruel and unusual punishment. (*Franklin*, *supra,* at p. 268.) During the pendency of his appeal, the Legislature enacted sections 3051 and 4801 to provide a parole hearing during the 25th year of incarceration for certain juveniles sentenced as adults. (*Franklin*, *supra,* at pp. 276–277.) Since Franklin was eligible for such a hearing, his Eighth Amendment challenge was deemed moot by our high court. (*Franklin*, *supra,* at pp. 280, 286.) The court also held that sections 3051 and 4801 contemplated "that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate" consideration by the Board of Parole Hearings (Board). (*Franklin*, *supra,* at p. 283.) Since assembling this information was easier at or near the time of the juvenile's offense, the court remanded the case to give Franklin an opportunity to create a record of the kinds of information relevant to a youth offender parole hearing. (*Id.* at p. 284.)

Subsequently, in *Cook*, our high court concluded offenders with final convictions may file a motion in the trial court for a *Franklin* hearing. Accordingly, an offender entitled to a hearing under sections 3051 and 4801 may seek a *Franklin* hearing even though the offender's sentence is otherwise final. (*Cook*, *supra,* 7 Cal.5th at p. 451.)

This appeal does not involve a trial court's refusal to hold a *Franklin* hearing or Harring's inability to request one—indeed, nothing in this record shows Harring has ever sought such a hearing or that he is precluded from doing so. We need not remand this case for such a proceeding as it is for the trial court to consider in the first instance whether Harring has had sufficient opportunity for such evidence preservation and how to conduct such a hearing if one is warranted. (*Cook*, *supra,* 7 Cal.5th at p. 459.)

## DISPOSITION

The relevant evidence establishes by a preponderance of evidence that Harring's statement under section 1170(d)(2)(B)(ii) is true. The trial court's order denying Harring's recall and resentencing petition under section 1170(d)(2) is reversed. Harring's sentence is recalled pursuant to section 1170(d)(2)(E), and this case is remanded for the trial court to hold a resentencing hearing in accordance with the relevant provisions of section 1170(d)(2). We express no opinion as to how the trial court should exercise its discretion in resentencing.

MEEHAN, J.

WE CONCUR:


FRANSON, Acting P. J.


SNAUFFER, J.

24.