Filed 4/30/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>DERRICK MORRISON,<br><br>　　　Defendant and Respondent. | B291804<br><br>(Los Angeles County<br>Super. Ct. No. ZM038715) |

　　　APPEAL from an Order of the Superior Court of Los Angeles County.  Roberto Longoria, Judge.  Reversed.

　　　Jackie Lacey, Los Angeles County District Attorney, Phyllis C. Asayama, Deputy District Attorney, Matthew Brown, Deputy District Attorney for Plaintiff and Appellant.

　　　Ricardo D. Garcia, Los Angeles County Public Defender, Albert J. Measter, Head Deputy Public Defender, Alvin Thomas, Deputy Public Defender, Lara Kislinger, Deputy Public Defender, for Respondent.

Near the end of his term of confinement, prison authorities identified Respondent Derrick Morrison as a potential sexually violent predator (SVP) pursuant to the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600, et seq.) (SVPA).[1] As discussed more fully below, the SVPA mandates a process for the identification and involuntary civil commitment of SVPs beyond the expiration of their prison terms. Civil commitment protects the public and allows the SVP to receive treatment.

Morrison had been convicted of kidnapping and raping a fourteen-year-old girl, and forcing her to orally copulate him. While in prison for those crimes, Morrison repeatedly engaged in sexual misconduct and threatening sexualized behavior toward female prison medical professionals. He also admitted he had uncontrollable urges and was likely to rape again if released.

As part of the SVPA screening process, two psychologists employed by the state evaluated Morrison. Initially they disagreed with one another, with one evaluator saying Morrison met the criteria for commitment as an SVP, and the other opining he did not. Following statutory protocol, authorities then appointed two independent psychologists to evaluate Morrison again. They, too, disagreed with one another, with one expert opining Morrison met the SVP criteria and the other concluding he did not.

Authorities then referred the matter to a peer reviewer, who discovered the initial evaluator who concluded Morrison was not an SVP had failed to consider and address all the reports of Morrison's prison misconduct. The peer reviewer brought this

---

[1] All further statutory references are to the Welfare & Institutions Code unless otherwise noted.

oversight to the evaluator's attention. After reviewing the reports, including reports Morrison had repeatedly exposed himself to and masturbated in front of female medical professionals, and engaged in other threatening sexual behavior, the evaluator changed her opinion. Authorities then certified the reports of the two original evaluators and passed them along to the Los Angeles County District Attorney, who filed the civil commitment petition in this case.

The trial court dismissed the petition, however, agreeing with Morrison's contention that the statute required dismissal because section 6601, subdivision (f) provides in relevant part: "If an examination by independent professionals . . . is conducted, a petition to request commitment under this article shall only be filed if both independent professionals who evaluate the person . . . concur that the person meets the criteria for commitment . . . ." [2]

We reverse. Three of four experts concluded Morrison is an SVP. Morrison confided to a psychologist that, if released, he would rape again. Releasing him without submitting the issue to a jury would be an absurd result, frustrating the statutory purposes of protecting the public and providing treatment to

_____

[2] The dismissal order was unsigned and no judgment was entered. We may nevertheless review the order as an appeal from a final judgment in a special proceeding of a civil nature. (See Code of Civ. Proc. §1063-1064; *Bagration v. Superior Court* (2003) 110 Cal.App.4th 1677, 1685; *Knoll v. Davidson* (1974) 12 Cal.3d 335, 343.) Or we may treat the notice of appeal as a writ petition. Dismissal of an SVP commitment petition may be challenged by writ review because "dismissal will result in the release of one potentially dangerous to the public." (*People v. Superior Court* (2002) 27 Cal.4th. 888, 902 fn.4 (*Ghilotti*).)

3

sexually violent offenders. (See Stats.1995, ch. 763, § 1.) We conclude the statute *required* the Director of the Department of State Hospitals (DSH) to request the District Attorney to file a civil commitment petition, and therefore dismissal was unwarranted.

## STATUTORY FRAMEWORK.

The SVPA took effect on January 1, 1996 and provides for the involuntary civil commitment of SVPs upon completion of their prison terms. (§ 6600, et seq.; *Ghilotti, supra,* 27 Cal.4th at p. 902.) The process of determining whether a convicted sex offender meets the requirements of the SVPA takes place in several stages, both administrative and judicial.

The SVPA targets individuals presently in prison for any offense, or after a parole revocation, who have been convicted of a sexually violent offense—as defined by statute—against one or more victims, and who currently have "a diagnosed mental disorder" making them "a danger to the health and safety of others in that it is likely that [they] will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1); § 6601, subd. (d).) As a prisoner's release date approaches, the California Department of Corrections and Rehabilitation (CDCR) is required to screen the inmate as a potential SVP. (§ 6601, subds. (a) & (b).)

If the screening indicates the offender is a potential SVP, he or she is referred for evaluation by two psychologists or psychiatrists. (§ 6601, subds.(c) & (d);[3] *Hubbart v. Superior*

---

[3] Section 6601, subdivision (c) provides: "The State Department of State Hospitals shall evaluate the person in accordance with a standardized assessment protocol, developed

4

*Court* (1999) 19 Cal.4th 1138, 1146.)  If after evaluating the inmate both professionals agree the inmate "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," an involuntary commitment petition shall be filed. (§ 6601, subds. (d) & (i).)  When there is a split of opinion between the original evaluators, independent professionals are contacted to evaluate the inmate again. A petition "shall only be filed" if both independent evaluators believe the offender meets the criteria for involuntary commitment.  (§ 6601, subds.(e) & (f).)[4]

---

and updated by the State Department of State Hospitals, to determine whether the person is a sexually violent predator as defined in this article. The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder."

Subdivision (d) provides in relevant part:  "Pursuant to subdivision (c), the person shall be evaluated by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist, designated by the Director of State Hospitals. If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of State Hospitals shall forward a request for a petition for commitment under Section 6602 to the county designated in subdivision (i)."

[4] Section 6601, subdivision (e) provides: "If one of the professionals performing the evaluation pursuant to subdivision (d) does not concur that the person meets the criteria specified in

5

If, under section 6601, subdivision (d) or (f) two evaluators agree, a commitment petition is filed in the superior court. (§ 6601, subd. (i).)  It is in the superior court that the actual determination of SVP status takes place.  Because SVP commitment results in loss of liberty, the respondent is afforded a number of procedural protections typically granted a criminal defendant.  The superior court first holds a hearing where the person is entitled to the assistance of counsel to determine whether probable cause exists to believe the person named in the petition is likely to engage in sexually violent predatory criminal behavior upon release.  (§ 6602.)  If no probable cause is found, the petition is dismissed.  However, if the court finds probable cause, the court orders a trial to determine whether the person is an SVP under section 6600.  (§ 6602, subd. (a); *Hubbart, supra*, 19 Cal.4th at pp. 1146, fn. omitted.)

At trial, the alleged SVP is entitled to the assistance of counsel, the right to retain experts or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports.

---

subdivision (d), but the other professional concludes that the person meets those criteria, the Director of State Hospitals shall arrange for further examination of the person by two independent professionals selected in accordance with subdivision (g)."

Section 6601, subdivision (f) provides in relevant part:  "If an examination by independent professionals pursuant to subdivision (e) is conducted, a petition to request commitment under this article shall only be filed if both independent professionals who evaluate the person pursuant to subdivision (e) concur that the person meets the criteria for commitment specified in subdivision (d)."

6

(§ 6603, subd. (a).)  The trier of fact is charged with determining whether the requirements for classification as an SVP have been established beyond a reasonable doubt.  (§ 6604.)  Any jury verdict on the issue must be unanimous.  (§ 6603, subd. (f).)

Pursuant to Proposition 83, passed by the voters in 2006, a person committed under the SVPA is committed for an indefinite term until he or she can establish by a preponderance of the evidence that he or she is no longer an SVP.  (*People v. McKee* (2010) 47 Cal.4th 1172, 1186–1188.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 1998, Morrison was convicted of violating Penal Code section 288a, subdivision (c) (oral copulation with a minor 14 years of age or older and section 261, subdivision (a)(2) (rape by force or fear), with an enhancement under section 667.8, subdivision (a) (kidnapping to commit a specified sex offense). Morrison met the victim at a bar, and—against her will—took her to a residence where he sexually assaulted her.  He received a term of 20 years in prison.

Morrison was due to be released from prison on September 23, 2017.  CDCR conducted an initial evaluation in December 2016 and concluded Morrison met initial screening criteria to be evaluated as an SVP.  In April 2017, DSH conducted a clinical review and recommended further evaluation of Morrison.

Pursuant to section 6601, subdivision (d), in June 2017, Dr. David Parecki and Dr. Lisa A. Jeko, both psychologists, were assigned Morrison's initial psychological and risk assessment. Both doctors' reports were due July 31, 2017.  Evaluators use a "standardized assessment protocol" promulgated in accordance with the Administrative Procedure Act.  (§ 6601, subd. (c).)  The

7

protocol "shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffence among sex offenders." (§ 6601, subd. (c).)

The two psychologists initially disagreed whether Morrison met the SVP criteria: Dr. Jeko believed he did not, while Dr. Parecki believed he did.

Subsequently, as a result of this split of opinion, the matter was referred for additional evaluation by two independent psychologists under section 6601, subdivision (e). Dr. Robert M. Brook interviewed and evaluated Morrison and concluded Morrison did meet the SVP criteria. But, the second psychologist, Dr. Mary Jane Alumbaugh, concluded Morrison did not.

Due to the split in opinions, DSH submitted all four evaluations for peer review before certification of the reports. Certification is the process by which DSH indicates the reports are ready either to be sent to the appropriate county to petition for commitment, or used to authorize closure of the case if there is no referral to a county District Attorney or County Counsel. DSH permits evaluators to alter their reports prior to certification.

Pursuant to the peer review process, the peer reviewer contacted Drs. Jeko and Alumbaugh to address DSH's comments regarding their reports. Dr. Alumbaugh responded and confirmed her opinion remained the same. But Dr. Jeko requested additional information regarding Morrison's history in response to the peer reviewer's observation that there were more CDCR 115 Rule reports (which document rule violations by prisoners) than Dr. Jeko noted in her report.

After reviewing the additional information, Dr. Jeko revised her evaluation to conclude Morrison is an SVP. The

complete record revealed Morrison had close to 30 separate 115 Rule violations dating from 2002 to September 2016. These included repeated episodes of indecent exposure and/or masturbation in front of female nurses, physicians, and psychologists. For example, Morrison confronted a female psychologist in her office and exposed himself, masturbated during a session with a female physician, and masturbated and exposed himself through his cell door to another female psychologist. At least one female psychologist felt "very uncomfortable and quite threatened" by Morrison's misconduct. Morrison told a psychologist he had uncontrollable urges and, if released, he would rape again. Dr. Jeko diagnosed Morrison with Unspecified Paraphilia Disorder, Exhibitionist Disorder, and Antisocial Personality Disorder. Dr. Jeko's initial report was based on a significantly smaller and less detailed list of 115 Rule violations and did not reflect the extent and depth of Morrison's misconduct in prison.

DSH certified Dr. Parecki's evaluation and Dr. Jeko's updated evaluation, and sent them to the Los Angeles County District Attorney. DSH did not mention the set of independent evaluations and did not send them to the District Attorney, nor did it mention Dr. Jeko's initial evaluation.

On September 19, 2017, the District Attorney filed a petition to commit Morrison as an SVP pursuant to section 6602. Morrison was arraigned on the petition on September 22, 2017.

Morrison then filed a motion to dismiss the petition, contending it did not comply with section 6601, subdivision (e) because the second set of evaluators did not concur that Morrison was an SVP, and unless they concurred, no petition could be filed even if the initial evaluators had later concurred. The District

9

Attorney opposed, arguing evaluators may alter their reports prior to certification, and once a petition has been filed, dismissal is not the appropriate remedy.

At the hearing on the motion to dismiss, Morrison argued the plain language of section 6601, subdivision (f) did not permit the filing of the petition, and DSH's peer review quality assurance process by which it certified the opinions of the first evaluators was not set forth in the statutory language. The District Attorney argued nothing in the statute precluded a doctor from reevaluating his or her opinion, and prohibiting reevaluation would not serve the purpose of the SVPA. The court took the matter under submission.

The court later heard additional argument. The District Attorney argued the court should not disregard the state's compelling interest in protecting the public from SVPs, and Morrison could not show his rights under the SVPA were in any way impaired. Morrison argued the statute unambiguously precludes filing of the petition in this case, and it was silent on quality assurance protocols.

The court observed, "the People . . . are asking this court to not only ignore the plain statutory language [of section] 6601(d), but to rewrite it to permit an original evaluator's report that changes from a negative to a positive to be substituted in when nothing in the construction of the statute in its language [*sic*] provides for this." The court granted the motion to dismiss and this appeal followed. On August 29, 2018, we granted the People's petition for writ of supersedeas and stayed the matter pending appeal.

**DISCUSSION**

**I.    STANDARD OF REVIEW AND PRINCIPLES OF STATUTORY INTERPRETATION.**

"We review de novo questions of statutory construction. In doing so, ' "our fundamental task is to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " ' [Citation.]" (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) "We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616 (*City of San Jose*).)  We give words their usual, ordinary meanings.  (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.)  "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose."  (*City of San Jose, supra,* 2 Cal.5th at pp. 616–617.)

If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.  (*City of San Jose, supra,* 2 Cal.5th at pp. 616–617.)  "We must . . .  give [an ambiguous provision] a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers . . . which upon application will result

11

in wise policy rather than mischief or absurdity." (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567, internal quotation marks omitted.)

Here, the Legislature included an express statement of its purpose and intent in an uncodified section of the statute, emphasizing a desire to protect the public from sexually violent predators, and to secure treatment for SVP's:

> "The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society." (Stats.1995, ch. 763, § 1.)

## II. THE SVPA REQUIRES THE FILING OF A COMMITMENT PETITION WHEN BOTH INITIAL EVALUATORS CONCUR, EVEN IF THEY DO SO AFTER INITIAL DISAGREEMENT.

Morrison asserts the statutory language of subdivisions (d), (e) and (f) creates a decision tree providing for evaluations to take place in a specific order such that once a set of "independent"

12

evaluations under subdivision (f) is conducted, those evaluations take precedence over earlier evaluations under subdivision (d). Under Morrison's view, the statute prohibits any reliance on the original evaluators once the independent set of evaluations is completed. Morrison bases his interpretation upon the language of subdivision (f) stating "[i]f an examination by independent professionals … is conducted, a petition to request commitment under this article *shall only be filed* if both independent professionals . . . concur" the person is an SVP.

Morrison misreads the statute. Subdivision (d) states, in relevant part, "If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director of State Hospitals *shall* forward a request for a petition for commitment under Section 6602 to the county . . . ." (Emphasis added.) By using the word "shall" in subdivision (d), the Legislature *required* the Director of State Hospitals to forward a request for filing a petition if—as was the case here—both initial evaluators agree the subject meets the SVP criteria. The statute does not make an exception for the situation in this case: a concurrence among the original evaluators, coming after the peer review process, and after independent evaluators had completed their evaluations. Once Dr. Jeko revised her evaluation, the Director had a mandatory obligation to forward the request for filing, and the Director complied.

Subdivision (f) can be reconciled easily with the clear mandatory duty created in subdivision (d). If the two initial evaluators under subdivision (d) ultimately agree the person meets the SVP criteria, the request for filing must ("shall") be forwarded to the relevant county. If, as happened here, the initial

13

evaluators do not immediately agree, evaluations may also be conducted under subdivision (f). If the independent evaluators both agree, the Director may forward a request for filing based on the independent evaluations. He or she may not do so under subdivision (f) if the independent evaluators do not concur. (*See* Section 6601, subdivision (f), ["[P]etition . . . shall only be filed if both independent professionals . . . concur . . ."]) But if—as happened in this case—the independent evaluators disagree, but both original evaluators ultimately agree the person meets the SVP criteria, the Director is *not* relieved from his or her mandatory obligation under subdivision (d) to forward a request for filing a petition. This is consistent with the Legislature's intent to protect the public by filing petitions in cases where warranted, but not where filing is unwarranted. (*People v. Scott* (2002) 100 Cal. App. 4th 1060, 1063 ["The Legislature has imposed procedural safeguards to prevent meritless petitions from reaching trial"].)

So understood, the filing of the petition here was in full compliance with the procedures of section 6601 because it was supported by the concurrence of two subdivision (d) evaluators. "Read together, subdivisions (d), (e) and (f) of Section 6601 amount to an unambiguous statutory prefiling requirement that a petition for commitment or recommitment may not be filed unless two evaluators, appointed under the procedures specified in Section 6601, subdivisions (d) and (e), have concurred that the person currently meets the criteria for commitment under the SVPA [Citations.] Where this initial requirement is not met, the commitment may not proceed." (*Reilly v. Superior Court* (2013) 57 Cal.4th 641, 647, internal quotation marks omitted.)

14

Morrison assails DSH's use of a peer review process in connection with its screening of possible SVPs, but we conclude the use of that process is consistent with the statute's preference for accurate evaluations and its explicit directive to "conduct a full evaluation." (§ 6601, subd. (b).) "If as a result of . . . screening it is determined that the person is likely to be a sexually violent predator, the [CDCR] shall refer the person to the [DSH] for a *full evaluation* of whether the person meets the criteria in section 6600." (§ 6601, subd. (b), italics added.) In this case, one of the two original evaluators did not do a "full evaluation" because she mistakenly did not review the entirety of the relevant record. The error was called to her attention. Dr. Jeko then reviewed the additional material and revised her opinion, finding Morrison posed a danger to the public.

Obviously, the protocol of section 6601 contemplates that in doing a "full evaluation," the original evaluators will do a complete assessment based on all relevant information. Without a complete review, an evaluator cannot comply (and in fact, violates) the statutory mandate of considering all the risk factors: "Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c).) All of these factors require consideration of the entire relevant record. For instance, an evaluator cannot possibly determine the duration of sexual deviance and the severity of the mental disorder without reviewing incidents like those initially neglected by Dr. Jeko.

True, nothing in the statute expressly permits a peer review to assess the reliability of the initial and supplemental evaluations. But nothing in the statute precludes it either, and

15

the structure of subdivisions (d), (e) and (f) is perfectly consistent with a process in which the two differing initial evaluations and the two supplemental evaluations are assessed and revaluated before being certified. Indeed, such peer review is common in the forensic psychiatric and psychological community.

As revealed by this case, the peer review serves the purpose of the SVP protocol, because it enhances the reliability of the evaluations by ensuring completeness and adherence to professional standards. Indeed, the peer review can work to the offender's benefit if it reveals positive information that an original evaluator neglected to consider. The statute ought not to be construed to put the public at risk or to deny release to a person being screened, based on an initial incomplete evaluation, and nothing in the statute precludes an initial evaluator from changing an opinion when the peer reviewer calls to his or her attention additional relevant information warranting a reevaluation.[5]

---

[5] Other provisions of the statute also demonstrate the Legislature's preference for accurate and updated evaluations. For example, section 6603, subdivision (c) provides "[i]f the attorney petitioning for commitment under this article determines that updated evaluations are necessary in order to properly present the case for commitment, the attorney may request the [DSH] to perform updated evaluations. If one or more of the original evaluators is no longer available to testify for the petitioner in court proceedings, the attorney petitioning for commitment under this article may request . . . replacement evaluations. . . . However, updated or replacement evaluations shall not be performed except as necessary to update one or more of the original evaluations or to replace the evaluation of an evaluator who is no longer available to testify for the petitioner in court proceedings. . . . If an updated or replacement evaluation

Permitting peer review of evaluations before filing the petition is consistent with the preliminary role evaluations play in the SVP commitment scheme. It is not in the pre-filing administrative process, but at trial that the critical SVP determination is made. (See *People v. Superior Court* (2001) 87 Cal.App.4th 1122, 1130 (*Preciado*).) "After the petition is filed, rather than demonstrating the existence of the two evaluations, the People are required to show the more essential fact that the alleged SVP is a person likely to engage in sexually violent predatory criminal behavior. [Citation.]" (Ibid.)

In *Reilly, supra*, 57 Cal. 4th 641, 655, our Supreme Court clarified that SVP petitions should not be dismissed based on errors in the administrative assessment process, absent a showing of material error, and even then the remedy may be reevaluation rather than dismissal. "Indeed, if an alleged SVP can demonstrate that a material error occurred in the evaluative process, for purposes of section 6601, both concurring evaluations are invalid and are rendered a legal nullity. New evaluations must therefore replace them, ensuring that an alleged SVP who has proved that material error occurred in the proceedings receives adequate protection under the SVPA." (*Ibid.*) As the court noted, "the Legislature did not intend that courts interpret section 6601's procedural requirements with unnecessary strictness to prevent the trier of fact from ultimately determining each individual's SVP status." (*Ibid*. at 655-656.) Here, there was no showing of error, much less material error, and we see no

---

results in a split opinion as to whether the person subject to this article meets the criteria for commitment, [DSH] shall conduct two additional evaluations in accordance with subdivision (f) of Section 6601."

reason to depart from the Legislature's evident preference that SVP status be determined at trial.

Where, as here, the evaluators under section 6601, subdivision (d) initially disagree, but as a result of a peer review process and review of a more complete record they eventually agree the person being evaluated is an SVP, the Director of the DSH must request the filing of a commitment petition.  This is so even if, as was the case here, independent professionals performed an evaluation pursuant to section 6601, subdivision (f), but did not both concur the person meets the SVP criteria.  This reading of section 6601 implements the Legislature's purpose and avoids an absurd result.  "'Once the intention of the Legislature is ascertained, it will be given effect even though it may not be consistent with the strict letter of the statute.'" (*People v. Ali* (1967) 66 Cal.2d 277, 280; see also *Hudec v. Superior Court* (2015) 60 Cal.4th 815, 828 [language of statute will not be given literal meaning if absurd result obtains].)

## CONCLUSION

We discern no error in the pre-petition process and reverse the order dismissing the petition.

## CERTIFIED FOR PUBLICATION

CURREY, J.

We Concur:

WILLHITE, Acting P.J.

COLLINS, J.