Filed 12/1/22  P. v. Alcaraz CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B313936 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA057694) |
| v. | |
| STEVEN HECTOR ALCARAZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel B. Feldstern, Judge.  Affirmed.

Richard B. Lennon and Rudolph J. Alejo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Steven Hector Alcaraz appeals the trial court's order denying his petition for vacatur of his murder conviction and resentencing under former Penal Code[1]section 1170.95 (now § 1172.6),[2] following an order to show cause and hearing pursuant to subdivision (d)(3) (entitlement hearing).

At the entitlement hearing, the trial court refused Alcaraz's request to testify on his own behalf. On appeal, Alcaraz contends that the trial court's exclusion of his testimony violated section 1172.6, subdivision (d)(3), which permits a petitioner to offer new or additional evidence, and violated his constitutional rights.

We affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY

### *The Murder Conviction*

As relevant here, Alcaraz "participated in a gang-related assault on September 22, 2006. He was driving in his home neighborhood when he saw a GMC Yukon occupied by Javier Nuno, Jr., his brother, Fernando Nuno, Javier's girlfriend, Janett Ramirez, and their 13-month-old daughter, Elisa Nuno.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

Defendant telephoned his brother, Andrew Alcaraz,[3] and told him the location of the vehicle.  Defendant encouraged his brother to 'go get them' and to 'blast them.'  Andrew Alcaraz and two fellow gang members pursued the Nunos.  One of the three repeatedly fired a weapon at the vehicle occupied by the Nunos.  Fernando was killed." (*People v. Alcaraz* (Apr. 3, 2013, B236508) 2 [nonpub. opn.].)

Alcaraz was charged with murder (§ 187, subd. (a); count 1), three counts of attempted murder (§§ 187, subd. (a) & 664; counts 2–4), and shooting at an occupied vehicle (§ 246; count 5).  It was alleged with respect to all counts that a principal personally and intentionally discharged a firearm causing death (§ 12022.53, subds. (d) & (e)(1)), and that the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).

At trial, Alcaraz was prosecuted for murder as a direct aider and abettor, and as an aider and abettor to shooting at an occupied vehicle of which murder was a natural and probable consequence.  The People also presented evidence that Alcaraz conspired to murder, or conspired to shoot at an occupied vehicle, of which murder was a natural and probable consequence.

Alcaraz was convicted of second degree murder and shooting at an occupied vehicle.  The jury found true the attached firearm and gang allegations.  He was acquitted of attempted murder in counts 2 through 4.

Alcaraz was sentenced to 15 years to life on count 1, with a concurrent sentence of 25 years to life for the firearm

---

[3] We refer to Andrew Alcaraz by his first name for the sake of clarity; we intend no disrespect.

enhancement (§ 12022.53, subds. (d) & (e)(1)).  On count 5, Alcaraz was sentenced to the upper term of seven years in prison plus a consecutive term of 25 years to life for the firearm enhancement (§ 12022.53, subds. (d) & (e)(1)).  The trial court imposed and stayed firearm enhancements under section 12022.53, subdivisions (b) and (c) in both counts.

On appeal, another panel of this court remanded for resentencing on count 5 and other modifications to the abstract of judgment, but otherwise affirmed the convictions.

### *The Resentencing Petition*

Alcaraz filed a petition for habeas corpus on February 1, 2019, contending that he was eligible for vacatur and resentencing under former section 1170.95.  The trial court construed the habeas corpus petition as a petition for resentencing under former section 1170.95 as well as a petition for habeas corpus, and appointed counsel.  The People filed an opposition to the petition for resentencing on June 6, 2019.  Alcaraz filed a reply to the opposition on August 21, 2019.

The trial court issued an order to show cause why relief should not be granted under former section 1170.95.  Petitioner filed supplemental points and authorities to his petition on December 26, 2019.  The People filed a supplemental opposition to the petition on January 17, 2020, requesting that the court reconsider whether Alcaraz made a prima facie case of eligibility.

At a preparation hearing on February 11, 2020, the court ordered the parties to provide further briefing.  On April 20, 2020, the People filed supplemental briefing.  Alcaraz filed supplemental briefing on June 22, 2020.  On July 7, 2020, the

4

People filed a "FINAL MOTION IN OPPOSITION" to the petition. On July 20, 2020, Alcaraz filed a "NEW & IMPROVED & HOPEFULLY FINAL ADDITIONAL SUPPLEMENTAL POINTS & AUTHORITIES" in support of the petition.

In a hearing on July 30, 2020, the court construed the petition for habeas corpus as petition for resentencing under former section 1170.95. The court stated that it would review the petition on the grounds relating to former section 1170.95 resentencing only, and noted that all other grounds and claims alleged in the petition had been withdrawn and were otherwise summarily denied. The court again found that Alcaraz made a prima facie case for relief and issued a second order to show cause superseding its prior order. The order to show cause ordered "each party to prepare a summary of potential evidence outside the record of conviction [that] they will seek to introduce at the hearing on the petition pursuant to [section] 1170.95[, subdivision] (d)(3) and to be prepared to present a proffer for the court" and to share their proffers with each other at an upcoming status hearing.

In September 2020, the People filed a summary of evidence for the entitlement hearing. The People identified the specific portions of the record of conviction, including testimony from Alcaraz's trial, that they intended to rely upon. The People indicated that they would only present evidence from outside the record of conviction in rebuttal to evidence offered by the defense. The defense made no filing. At a status hearing on September 10, 2020, the court inquired whether the defense would be offering any witnesses at the entitlement hearing. Counsel identified Alcaraz's brother, Andrew, and Edgar Nunez, who accompanied Andrew at the time of the shooting. The court

reminded defense counsel that it had expected to receive a written submission with a proffer as to what the witnesses would testify to at the entitlement hearing.

***The Entitlement Hearing***

Alcaraz and his counsel were present for the entitlement hearing, which was held on June 8, 2021. At the hearing, Alcaraz's brother, Andrew, testified on Alcaraz's behalf. Andrew testified that he was solely responsible for the shooting, and had pleaded no contest to murder. Alcaraz was not present when the shooting occurred and had nothing to do with it. Andrew and Alcaraz spoke on the phone around the time of the shooting because Alcaraz wanted to buy marijuana. Alcaraz did not mention that he had been looking for Fernando Nuno earlier that day, and did not give Andrew the victims' location. Andrew did not recall telling the defense investigator that Alcaraz told Andrew he was being followed by the victims. When confronted with an audiotape that impeached this testimony, Andrew admitted that he did say Alcaraz told him he was being followed by the victims, and that the statement was true. However, Andrew did not ask Alcaraz where he was and then drive to that location to avenge Alcaraz. Andrew saw the victims drive past Edgar Nunez's house, Andrew and Nunez followed them, and Andrew "blasted" them. Andrew was familiar with the victims' vehicle because he and Alcaraz were friends with Sergio Nuno, and the victims were part of Sergio's family.

Andrew explained that he was testifying because he wanted to help his brother and tell the truth. Andrew had lied to police officers about the shooting when he was first arrested

6

because he was trying to "get [his] way out of something." He lied about "all kinds of stuff just trying to basically tell people what they wanted to hear." Andrew stated that he shot Fernando Nuno because "I was young and stupid." Andrew admitted that he shot the victim because he was a member of a rival gang, Andrew did not know that there was a "green light out" on Fernando Nuno. Andrew admitted that Edgar Nunez was driving the car from which Andrew shot the victim, but testified that Nunez was not involved—"he didn't make me pull the trigger."

Following Andrew's testimony, defense counsel requested that Alcaraz be permitted to testify and noted that he had previously asked whether Alcaraz could testify and the court had ruled Alcaraz could not. The trial court responded, "My [off-record] ruling had to do with not knowing whether he had anything additional that he could offer beyond the very, very lengthy testimony he gave at trial. So your comment to me was he was going to vouch for his brother which I didn't find to be very compelling at all should his brother testify, which he did. So that was the basis of it. So I'm not—this is one witness, this is one person, Mr. Alcaraz, Steven, who testified fully at the trial itself."

Defense counsel emphasized that now that Andrew had testified, Alcaraz wished to testify "to confirm what his brother said in terms of what the purpose was that night . . . some of which would be contrary to what his brother said, but primarily to—"

The trial court interposed, "Wouldn't it be fair to say he covered this at the trial, even though his brother did not testify at the trial, that he covered all this area?"

7

"[Defense counsel]:  Well, he covered the entire incident.

"The court:  What he was doing, when he was doing it, why he was doing everything, at the trial.  Would this be fair to say?

"[Defense counsel]:  I'm asking that he be allowed to testify. If you are feeling, or your belief is he covered all the ground, I just made my request I think it would be helpful.

"The court:  I will view it as a general request and I don't have a sufficient offer of proof to tell me otherwise.  I'll just rely back on the fact he testified at length, and I mean that was one of the longest witnesses in the trial, and therefore I don't see how this could assist me in making a decision in this case.  So absent any specific proffer, I would deny that request to call him as a witness.

"[Defense counsel]:  Well, there were things that Andrew said that were not true as well.

"[The court]:  You are making general statements.  I will say it this way, if there is something specific that your client would be testifying to, specific, then you can tell me."

Counsel conferred with Alcaraz and submitted on his request without further comment.

The trial court found that the people had proved Alcaraz could be convicted of murder beyond a reasonable doubt as an aider and abettor who acted with either express or implied malice.

## DISCUSSION

### *Section 1172.6*

Effective January 1, 2019, the Legislature amended sections 188 and 189 "as to the 'felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Sen. Bill No. 1437 (2017–2018 Reg. Sess.); Stats. 2018, ch. 1015, § 1, subd. (f).) As amended, the law defining malice provides that except for first degree felony murder, 'in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3); *People v. Eynon* [(2021)] 68 Cal.App.5th [967,] 974.) By this change, the Legislature intended that '[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea.' (Stats. 2018, ch. 1015, § 1, subd. (g).)" (*People v. Basler* (2022) 80 Cal.App.5th 46, 54, fn. omitted.)

As relevant here, pursuant to section 1172.6, subdivision (a)(1) to (3), a defendant must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . [;] [¶] (2) The petitioner was

9

convicted of murder . . . following a trial . . . [;] [¶] [and] (3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (See *id.*, subd. (b)(1)(A).)

Upon receipt of a petition meeting these requirements, the trial court will appoint counsel, if requested. (§ 1172.6, subd. (b)(3).) The prosecutor must file a response within 60 days of the service of the petition, and the petitioner may file a reply within 30 days of the response. (§ 1172.6, subd. (c).) When briefing has been completed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Ibid.*) Within 60 days of issuance of the order to show cause, the trial court shall hold a hearing "to determine whether the petitioner is entitled to relief." (§ 1172.6, subd. (d)(1) & (3).)

"At the hearing . . . the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. . . . If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

The trial court acts as the finder of fact when determining whether the prosecution has met its burden beyond a reasonable

doubt. (*People v. Clements* (2022) 75 Cal.App.5th 276, 296–297; see *People v. Gentile* (2020) 10 Cal.5th 830, 855 [former "section 1170.95 requires the superior court to determine on an individualized basis, after considering any new or additional evidence offered by the parties, whether the defendant is entitled to relief"], superseded by statute on another ground as stated in *People v. Birdsall* (2022) 77 Cal.App.5th 859, 868.)

*Analysis*

Alcaraz contends that the trial court's exclusion of his testimony violated section 1172.6, subdivision (d)(3), which permits a petitioner to offer new or additional evidence, and his constitutional rights to present a defense and to due process. The People argue that Alcaraz has failed to demonstrate that he has a constitutional right to testify in a section 1172.6, subdivision (d)(3) hearing, which is a collateral proceeding. The People further assert that the trial court did not abuse its discretion by excluding Alcaraz's testimony, which was duplicative of his trial testimony, and therefore not admissible as "new" or "additional" evidence under section 1172.6, subdivision (d)(3).[4]

We affirm the trial court's order. We emphasize at the outset that Alcaraz's case presents a unique situation. We do not anticipate that there will be many cases in which a petitioner,

---

[4] The People also contend that Alcaraz forfeited his contentions by failing to provide an adequate offer of proof. We need not reach this issue, because even assuming Alcaraz preserved the issue for appeal, we conclude that the trial court did not violate section 1172.6 or Alcaraz's constitutional rights.

11

having previously testified at his trial, wishes to testify at his entitlement hearing, but does not make an offer of proof that he will offer any testimony not already included in his trial testimony. It will therefore be a rare circumstance in which a trial court's exclusion of the defendant's testimony will not be an abuse of discretion.

Although we ultimately conclude that the trial court did not abuse its discretion in this case, the best practice under the circumstances would be to allow the defendant to testify on his own behalf, limiting that testimony only if the petitioner's specific responses in examination are not new or additional to his trial testimony. Such a course prevents the unnecessary use of judicial resources for both the trial court and the court of appeal.

### *Exclusion of Alcaraz's Testimony Did Not Violate Section 1172.6*

We review questions of statutory interpretation de novo. (*People v. Morrison* (2019) 34 Cal.App.5th 980, 989.) "When we interpret statutes, our primary task is to determine and give effect to the Legislature's purpose in enacting the law." (*In re H.W.* (2019) 6 Cal.5th 1068, 1073.) " 'We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' " (*People v. Arias* (2008) 45 Cal.4th 169, 177.)

Section 1172.6 permits the parties to "offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).) In an entitlement hearing held pursuant to section 1172.6, subdivision (d)(3), the "admission of evidence in the

12

hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."

The language of section 1172.6 is not ambiguous.  The statute makes clear that not all relevant evidence may be admitted—only evidence that is "new" or "additional" to the evidence specified in the statute, which will generally consist of documents in the record of conviction is admissible.  The statute contemplates that the trial court will exercise its discretion to exclude evidence by applying the rules for admission of evidence set forth in section 1172.6, subdivision (d)(3).  The statute does not except a petitioner's testimony from these evidentiary rules or remove the decision to exclude or limit a petitioner's testimony from the trial court's discretion.

Alcaraz's argument that the trial court prohibited him from offering new or additional evidence misrepresents the record.  The trial court permitted Alcaraz's brother to testify at the hearing, and considered Alcaraz's request to testify himself.  The trial court denied Alcaraz's request to testify because Alcaraz did not assert that he had anything to offer that was additional to his testimony at trial.  The trial court gave Alcaraz the opportunity to make a more specific request, but Alcaraz declined.  If the trial court had completely prevented Alcaraz from offering any new or

13

additional evidence at the entitlement hearing, the deprivation would have been a violation of the statute. In this case, the trial court admitted new and additional testimony, but in its discretion excluded Alcaraz's proffered testimony. The error, if any, is not a violation of section 1172.6, but rather a failure to exercise appropriate discretion in excluding evidence as provided for under the statute. (See *People v. Flores* (2020) 9 Cal.5th 371, 409 [trial court's evidentiary ruling is reviewed for abuse of discretion].)

The trial court did not abuse its discretion. Alcaraz wished to testify to support in part and rebut in part the substance of his brother's testimony. The trial court inquired whether the facts Alcaraz would attest to were new or additional to his trial testimony. Alcaraz offered no specific facts that were new or additional, and submitted without further argument.[5]

### *The Trial Court Did Not Violate Alcaraz's Constitutional Rights*

Alcaraz further contends that the trial court's refusal to allow him to testify violated his Sixth and Fourteenth Amendment right to present a defense, and his right to due process under the Fourteenth amendment. He analogizes his case to *Brooks v. Tennessee* (1972) 406 U.S. 605 and *Morrissey v.*

---

[5] On appeal, Alcaraz argues that he was deprived of the opportunity to have the trial court evaluate his demeanor. However, he did not raise the issue with the trial court (who had presided over the trial and witnessed his demeanor when Alcaraz testified), and has therefore forfeited the argument. (*People v. Hartshorn* (2012) 202 Cal.App.4th 1145, 1151.)

14

*Brewer* (1972) 408 U.S. 471, respectively. These cases are inapposite, however. *Brooks* addressed a criminal defendant's right to testify on his own behalf at trial. *Morrissey* held that minimum due process requirements must be met before parole may be revoked. (*Morrissey*, at p. 489.) Unlike a jury trial or parole revocation proceeding, a section 1172.6 proceeding does not place a defendant at risk of losing liberty or suffering increased punishment. "Section 1170.95 is 'an act of lenity' that requires, under specified circumstances, reduction of the offense for which [the defendant] was properly convicted." (*People v. James* (2021) 63 Cal.App.5th 604, 609 [no right to jury trial in former section 1170.95 proceedings]; accord *People v. Basler*, *supra*, 80 Cal.App.5th at p. 62 [same].) Alcaraz points to no precedent to support his contention that a defendant has a right to testify in collateral proceedings.

Regardless, we need not decide the question here, because even where a constitutional right exists, the right to testify on one's own behalf is not without limitations. (*Rock v. Arkansas* (1987) 483 U.S. 44, 55.) "Numerous state procedural and evidentiary rules control the presentation of evidence and do not offend the defendant's right to testify." (*Id*. at p. 56, fn. 11.) Application of state rules does not offend the constitution as long as those rules are proportionate to the purposes they are intended to serve. (*Id*. at pp. 55–56.)

As relevant here, the limitations that the Legislature has instituted are simply that evidence other than the type specified in the statute be "new" or "additional." These restrictions serve the legitimate purpose of avoiding the presentation of duplicative evidence that would utilize judicial time and resources without further elucidating the issues or otherwise benefitting the

15

petitioner. The exclusion of Alcaraz's testimony was proportionate to the purpose served, and did not offend the constitution.

## DISPOSITION

We affirm the order denying the section 1172.6 petition. NOT TO BE PUBLISHED.

MOOR, J.

I concur:

KIM, J.

*People v. Alcaraz - B313936*

**RUBIN, P. J. - Dissenting**

I agree with the majority opinion in many respects. Two examples suffice: "It will therefore be a rare circumstance in which a trial court's exclusion of the defendant's testimony will not be an abuse of discretion. (Maj. Opn. *ante*, at p. 12.) And, "[T]he best practice under the circumstances would be to allow the defendant to testify on his own behalf, limiting that testimony only if the petitioner's specific responses in examination are not new or additional to his trial testimony. Such a course prevents the unnecessary use of judicial resources for both the trial court and the court of appeal." (*Ibid.*)

In my view, it is not only the "best practice"; it should be the only practice. The denial of defendant's right to testify here was an abuse of discretion. Putting to one side whether a defendant has a constitutional right to provide testimony at a hearing under Penal Code section 1172.6, subdivision (d)(3) (section 1172.6(d)(3)), a defendant has the statutory right to offer new or additional evidence, which certainly includes the defendant's own testimony. (Cf. *Rock v. Arkansas* (1987) 483 U.S. 44, 52 ["Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense,' [citation] is a right to testify himself, should he decide it is in his favor to do so."].)[1]

---

[1] I do not address whether there is a constitutional right to testify at a section 1172.6 hearing because I find that right embodied in the statute. I observe, though, that the cases on which the People rely for the proposition that there is no constitutional right to testify do not deal with testimony at all.

It is understandable that the trial court had an eye for efficiency in these proceedings. Section 1172.6 hearings are taking a heavy toll on the trial courts. But, even assuming the trial court was permitted to inquire about the general subject of defendant's intended testimony, the defendant answered in kind. The record reflects that the court initially expressed doubt that he would allow defendant to testify in light of defense counsel's proffer. The majority then writes: "Defense counsel emphasized that now that [defendant's brother] Andrew had testified, Alcaraz wished to testify 'to confirm what his brother said in terms of what the purpose was that night . . . *some of which would be contrary to what his brother said, but primarily to—.*" (Maj. Opn. *ante*, at p. 7; italics added.) The trial court apparently interceded at this point, and the following exchange occurred:

---

Instead, they consider either *the right to a jury trial under the Sixth Amendment* (*People v. James* (2021) 63 Cal.App.5th 604, 607-611; *People v. Howard* (2020) 50 Cal.App.5th 727, 740; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156-1157; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1114-1115, review granted Nov. 13, 2019, S258175, transferred with directions to vacate and reconsider, opinion rendered depublished or not citeable Nov. 10, 2021); *the right to counsel* (*People v. Lewis* (2021) 11 Cal.5th 952, 973, *as modified on denial of reh'g* (Aug. 25, 2021); or *the trial court's ability to place reasonable limits on the testimony of a witness called by the defendant* (*People v. Marshall* (1996) 13 Cal.4th 799, 836; *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103).

As the majority acknowledges, none of the cases it references on the constitutional right to testify at a section 1172.6 hearing actually deals with that right. (Maj. Opn. *ante* at pp. 14-15.) Those cases hold there is no right to a jury trial at such hearings.

The Court: "Wouldn't it be fair to say he covered this at the trial, even though his brother did not testify at the trial, that he covered this area?"

Defense Counsel: "Well, he covered the entire incident."

The trial court pressed for more information on the proffered testimony. Defense counsel responded, "Well there were things that Andrew said that were not true as well." The court responded. "You are making general statements. I will say it this way, if there is something specific that your client would be testifying to, specific, then you can tell me." Defense counsel submitted. Defendant did not testify. (Maj. Opn. *ante,* at pp. 7-8.)

Assuming the trial court had the authority to ask at all for an offer of proof on defendant's own testimony, counsel properly responded. He told the court that some of what defendant's brother Andrew had testified to at the section 1172.6 hearing was "not true." His brother had not testified at the trial, so this was defendant's first and only chance to refute some of what his brother said at the hearing. To me, that was enough – a general statement of an offer of proof. Any more would require the defendant to disclose his testimony in advance, and I see nothing in section 1172.6 that supports such a proposition. To ask for more is evocative of the Tennessee statute struck down by our High Court in *Brooks v. Tennessee* (1972) 406 U.S. 605. Under then-existing Tennessee law, a criminal defendant "desiring to testify shall do so before any other testimony for the defense is heard by the court trying the case." (*Id.* at p. 606.) *Brooks* dealt with the defendant's right to testify at trial but it underscores the importance of not placing impediments on a criminal defendant's testimony.

3

At bottom, defendant proffered that he would rebut some of his brother's testimony – testimony that was not presented at trial.  Evidence attacking the testimony of a witness is sufficiently "new" or "additional" under the statute that the trial court should have permitted defendant to testify.  Under either *People v. Watson* (1956) 46 Cal.2d 818, 836, or *Chapman v. California* (1967) 386 U.S. 18, 24, the error was prejudicial as defendant was not allowed to testify that some of what his brother had said was untrue.


RUBIN, P. J.

4